PER CURIAM.
Mazda Motor Corporation’s petition for writ of certiorari seeks review of a trial court discovery order in this products liability case granting, over Mazda’s objections, the respondents/plaintiffs’ motion for leave to file numerous additional interrogatories (these being the third or fourth set of interrogatories filed by plaintiffs). This case arises out of a two-vehicle collision on February 19,1983, involving a 1981 model Mazda GLC automobile. The plaintiffs’ causes of action are based on specific allegations that the Mazda vehicle lacked “crashwor-thiness” because the pillars and passenger compartment of the vehicle were defectively manufactured or designed so as not to withstand the forces generated by the collision and, thus, did not adequately protect the operator and passengers. Without describing every interrogatory petitioner considers objectionable, it is clear that the interrogatories make broad inquiry into the following matters, which we paraphrase from the actual interrogatories:
(1) All lawsuits commenced during the period January 1, 1981 through January 1, 1984, in which allegations are made that a 1981 Mazda GLC or its component parts were defectively designed or lacked crashworthiness;
(2) Dates and locations of all accidents which occurred during the above period involving such model automobile;
(3) All reports, studies or analyses known to Mazda and promulgated before the subject accident which contain statements that such model automobile was *1022 defectively designed or lacked crashwor-thiness “to withstand intrusion into the passenger compartments”;
(4) Quality control standards or guidelines regarding “the location, number, spacing or quality of welds used in the manufacture of the 1981 Mazda GLC”;
(5) Mazda’s “quality assurance program in effect during the period January 1, 1980, to February 13, 1983, with regard to the manufacture of the vehicle”;
(6) Each treatise, article, journal, study, report, or writing relied upon by Mazda in determining the location, spacing and quality of welds to be used in the manufacture of the vehicle;
(7) Any and all tests, studies, calculations, or examinations conducted by or on behalf of Mazda during January 1, 1980 to April 15, 1983 regarding the A pillar, B pillar or welds used in the manufacture of the vehicle or its prototype, including the purpose of each, how each was made, and the name and address of each person responsible for each such test, etc.;
(8) The “environment of use of the vehicle prior to its sale or conveyance,” including whether a vehicle should be designed and built so that it can be used with reasonable safety within such environment, “the environment of use and circumstances under which the vehicle was designed to operate or be used,” “any and all limitations regarding the environment or conditions under which the vehicle was designed to be used,” and “any and all studies, tests, investigations or examinations conducted or prepared by or on behalf of Mazda” during “January 1, 1979 to April 1, 1983 which relate to or reflect the environment of use of the vehicle”;
(9) Identification of “any and all hazards” Mazda believed were likely to be associated with the use of the vehicle and “any and all predictive analyses, studies, tests, investigations, or examinations known to Mazda Motor Corporation when it designed the vehicle which you believe related to or reflected hazards likely to be associated with the use of the vehicle”;
(10) “Any and all predictive analyses, studies, tests, investigations, or examinations conducted or prepared during the period January 1, 1979 to April 1, 1983 which relate to collisions or failure modes involving 1981 Mazda GLC vehicles”;
(11) Corporate, industry, or government standards, specifications, regulations or requirements “regarding the location, number, spacing or quality of welds used in the manufacture of the 1981 Mazda GLC which the vehicle was designed to comply with or exceed”;
(12) Changes in the “basic engineering principles or technology as it related to the location, number, spacing or quality of welds used in the manufacture of the vehicle” up to the present date and a description thereof;
(13) Changes to the “design or construction of the 1981 Mazda GLC since the 1981 Mazda GLC vehicle was first marketed in the United States, including a description of any such change, the purpose thereof, the dates thereof, the identify of “each and every document that reflects any and all such changes,” and the names of persons having custody of documents relating to such changes;
(14) A description of any contemplated changes in the process by which the 1981 Mazda GLC vehicles are welded during manufacture, purposes of such change, documents relating thereto and names of persons having custody of such documents, and “the amount of any increase or decrease of your costs arising from any such change”;
(15) A description of “the efforts conducted by or on behalf of Mazda Motor Corporation to improve the vehicle’s safety subsequent to marketing the vehicle”;
(16) Information related to the marketing of vehicles “like or similar to the vehicle” by Mazda or any other entity in the United States.
Mazda requests that we exercise certio-rari jurisdiction pursuant to rules 9.030(b)(2)(A) and 9.100(c), Florida Rules of Appellate Procedure, and article V, section *1023 4(b)(1), (3), Florida Constitution, to review and grant relief from the illegality of the trial court order requiring it to answer these interrogatories, citing, e.g., Toyota Motor Corp. v. Greene, 483 So.2d 130 (Fla. 1st DCA 1986); Industrial Tractor Co. v. Bartlett, 454 So.2d 1067 (Fla. 5th DCA 1984); East Colonial Refuse Serv. v. Velloci, 416 So.2d 1276 (Fla. 5th DCA 1982); West Volusia Hosp. Auth. v. Williams, 308 So.2d 634 (Fla. 1st DCA 1975). Broadly speaking, and without detailing the specific arguments in respect to each interrogatory, Mazda contends that the order exceeds the permissible bounds of rule 1.280, Florida Rules of Civil Procedure, and departs from the essential requirements of law in numerous respects, mainly because it directs Mazda to answer interrogatories that inquire into matters well beyond the issues in the case in that the interrogatories permit unlimited inquiry concerning components, welds, safety considerations, manufacturing processes, design and manufacturing criteria, the undefined concept of “environment of use” of the vehicle, “hazards likely to be associated with the use of the vehicle”, and prior accidents and lawsuits, without limitation to the nature of the collision which actually took place or the portions and components of the vehicle actually involved in this case. In addition to the above decisions, Mazda also relies on the following, among others: Carribean Security System, Inc. v. Security Control System, Inc., 486 So.2d 654 (Fla. 3d DCA 1986); Owens-Illinois, Inc. v. Hoagland, 499 So.2d 940 (Fla. 5th DCA 1987); Edward J. DeBartolo Corp. v. Petrin, 497 So.2d 936 (Fla. 5th DCA 1986); Bucyrus-Erie Co. v. Hessey, 421 So.2d 672 (Fla. 3d DCA 1982); National Convenience Stores, Inc. v. Embrey, 375 So.2d 358 (Fla. 4th DCA 1979).
After considerable study of the voluminous pleadings, interrogatories, and cited authorities, we are convinced that the trial court, by declining to sustain Mazda’s objections to some interrogatories and failing to limit certain other interrogatories with respect to relevant dates, the components or portions of the vehicle involved in this case, and the nature of the collision which actually occurred, has departed from the essential requirements of the law as enunciated in several of these decisions. Nevertheless, we conclude, as did the Fifth District in Short v. Fleetwood Motor Homes of Pennsylvania, Inc., 511 So.2d 747 (Fla. 5th DCA 1987), that the supreme court’s recent decision in Martin-Johnson, Inc. v. Savage, 509 So.2d 1097 (Fla.1987), dictates that we decline to review the discovery order in this case. Were the rules limiting discovery in products liability cases subject to specific, well-defined principles, as was the case in Zebouni v. Toler, 513 So.2d 784 (Fla. 1st DCA 1987) regarding the bifurcation of accounting proceedings into two parts, the first to determine the right to an accounting and the second to make the actual accounting, we would not feel so constrained by the supreme court’s decision in Martin-Johnson.
Accordingly, the petition for certiorari is DENIED.
JOANOS, WIGGINTON and ZEHMER, JJ., concur.