Elizabeth Lamitie, as Administratrix of the Estate of Leon Recore, Deceased, Respondent, v Emerson Electric Company—White Rodgers Division, Appellant, et al., Defendants. (And Two Other Related Actions.)

Third Department, December 15, 1988

## APPEARANCES OF COUNSEL

*Law Offices of John A. Piasecki (Robert M. Sussman* of counsel), for appellant.

*Poissant, Twiss & Nichols, P. C. (Karen A. Merritt* of counsel), for respondent.

## OPINION OF THE COURT

LEVINE, J.

These three actions are for personal injuries and wrongful death arising out of a propane gas explosion, allegedly caused by a defective hot water heater control valve made by defendant Emerson Electric Company—White Rodgers Division (hereinafter defendant). Plaintiffs have based their action in strict products liability for defective design and manufacture, negligent design and manufacture and negligent effectuation of a product recall program. At a pretrial deposition of defendant through one of its employees, it was disclosed that the valve in question was the subject of reports, correspondence and conferences between defendant and the Federal Consumer Product Safety Commission (hereinafter the CPSC), as the agency administering the Consumer Product Safety Act (15 USC § 2051 *et seq.)* (hereinafter the Act). Ultimately, a settlement was reached between the CPSC and defendant under which defendant was to replace the suspect control valve with an improved device and issue a recall notice to purchasers and users of heaters containing the valve. Thereafter, defendant retained the consulting firm of Heiden, Pittaway Associates, Inc. (hereinafter Heiden) to evaluate the success of its recall program.

Plaintiffs sought disclosure of various documents and records in defendant's possession including the contents of defendant's CPSC file containing the reports and correspondence exchanged between defendant and the CPSC, minutes of defendant's meeting with CPSC staff and the Heiden report on the efficacy of defendant's recall program. When defendant resisted, plaintiffs moved for an order compelling disclosure and defendant cross-moved for a protective order on the ground, *inter alia,* that the CPSC-related materials sought and the Heiden report were privileged and, hence, not subject to disclosure. Supreme Court rejected defendant's claim of privilege and granted plaintiffs' motion to compel. The court, however, granted a protective order requiring plaintiffs to keep trade secrets, if any, in the disclosed documents confidential. This appeal by defendant followed.

Defendant's first contention is that the CPSC-related documents and records sought are statutorily privileged under the

provisions of section 6 of the Act, governing public disclosure by the CPSC of information obtained or intended to be disclosed with respect to a product (15 USC § 2055). As to this contention, defendant relies primarily on section 6 (b) of the Act, under which the CPSC is generally required to give advance notice to any manufacturer of a product whose identity could be ascertained from the proposed disclosure and to give such manufacturer an opportunity to object or comment on the fairness and accuracy of what the CPSC proposes to release (15 USC § 2055 [b] [1]). The Act affords such a manufacturer the right to seek an injunction against public disclosure in the Federal District Courts upon establishing that the CPSC failed to take reasonable steps to assure that the disclosure is fair and reasonably related to effectuating the purposes of the Act (15 USC § 2055 [b] [3]). Additionally, under section 6 (b) (5) of the Act, as to information which a manufacturer, distributor or retailer is statutorily compelled to report to the CPSC (such as data suggesting that a product has a defect which "could create a substantial product hazard" [15 USC § 2064 (b) (2)]), public disclosure by the CPSC is barred unless the agency has issued a formal complaint or, in lieu of a complaint, has accepted a written remedial settlement agreement, or the person who submitted the report consents (15 USC § 2055 [b] [5]). Defendant has averred that it brought suit under section 6 (b) of the Act to enjoin the CPSC from publicly disclosing the information sought here, which resulted in a stipulation in which the CPSC agreed to partial nondisclosure. Defendant argues that to permit discovery in this action of the information which the CPSC was prohibited from disclosing would directly conflict with the policy of the Act.

█ We disagree. Insofar as the order compelling discovery covers information defendant was mandated to report to the CPSC, the nondisclosure of which is covered by section 6 (b) (5) of the Act, that paragraph is expressly made inapplicable to disclosure "in the course of or concerning a judicial proceeding" (15 USC § 2055 [b] [5]). Therefore, the disclosure of such information in a personal injury action such as this is not barred by any statutory privilege (see, Roberts v Carrier Corp., 107 FRD 678, 682-683). As to the other materials which the CPSC agreed in its litigation with defendant not to disclose, in our view the order compelling defendant to submit to discovery in this private action does not conflict with any policy of the Act. By its terms, section 6 (b) only applies to *public*

disclosure by the CPSC. As the United States Supreme Court has concluded from a detailed examination of the legislative history of that section, its purpose, taking into account the broad information gathering powers of the CPSC, was to safeguard the reputations of manufacturers from damage arising from unfair disclosure by the CPSC of inaccurate or incomplete information to the public *(see, Consumer Prod. Safety Commn. v GTE Sylvania,* 447 US 102, 111-113). Any danger to defendant's reputation as a manufacturer from plaintiffs' access to incomplete or inaccurate information can clearly be obviated by an appropriate protective order, in this instance by extending Supreme Court's order against public disclosure to any information contained in the documents subject to discovery. Moreover, there is little basis for any apprehension that defendant would be damaged by unfair disclosure of such information at a public trial, where it will have a full opportunity to refute or explain whatever may be revealed. Accordingly, we find no basis for applying a statutory privilege under section 6 (b) of the Act barring discovery of what may be highly relevant material information in this product's liability action on such issues as defendant's prior knowledge of defect and the feasibility of the improved design.

██ Although defendant has not pressed the point on appeal, we have also reviewed the extent to which the provisions of section 6 (a) of the Act (15 USC § 2055 [a]) may have application to the discovery sought here. The disclosure prohibited by section 6 (a) of the Act *(see,* 15 USC § 2055 [a] [2]) is of trade secret or privileged or confidential commercial or financial information protected by the Federal Trade Secrets Act (18 USC § 1905) or exempted from disclosure under the Federal Freedom of Information Act (5 USC § 552 [b] [4]). Federal court decisions indicate that a person, in invoking those statutory protections from disclosure of trade secrets or other confidential business information, has the burden of showing by specific factual or evidentiary materials that substantial competitive injury would likely result from disclosure *(Sharyland Water Supply Corp. v Block,* 755 F2d 397, 399; *9 to 5 Org. for Women Off. Workers v Board of Governors of Fed. Reserve Sys.,* 721 F2d 1, 9; *Public Citizen Health Research Group v Food & Drug Admin.,* 704 F2d 1280, 1287; *Bristol-Myers Co. v Federal Trade Commn.,* 424 F2d 935, 938). Defendant's bare, conclusory allegations of competitive injury are clearly insufficient to afford it statutory protection from disclosure under section 6 (a) of the Act.

Alternatively, defendant contends that it should not be compelled to disclose the CPSC-related materials and the contents of the Heiden report assessing its product recall program on the basis of a common-law "critical self-analysis privilege". No New York court has applied such a privilege, but it has been recognized in a number of Federal cases in varying contexts *(see, Roberts v Carrier Corp.,* 107 FRD 678, 684-685, *supra; O'Connor v Chrysler Corp.,* 86 FRD 211, 218; *Gillman v United States,* 53 FRD 316, 318; *Bredice v Doctors' Hosp.,* 50 FRD 249, 250-251, *affd without opn* 479 F2d 920). These decisions accepting the critical self-analysis privilege are in conflict as to its scope. Some courts have limited the privilege (1) to reports by persons mandated by law to engage in self-evaluation, viewing as its purpose the encouragement of more complete and candid cooperation of the reporter with the governmental agency to whom the report must be made; and (2) to only the subjective, evaluative materials in such reports *(see, Roberts v Carrier Corp., supra).* Other courts have more generally applied the privilege to reports incident to voluntary, confidential in-house evaluations by organizations and institutions aimed at rectifying problems or improving products or services *(see, Gillman v United States, supra; Bredice v Doctors' Hosp., supra).* Still other courts have questioned the foundation for the privilege and have been reluctant to apply it *(see, Witten v Smith & Co.,* 100 FRD 446, 452, *affd* 785 F2d 306; *Wright v Patrolmen's Benev. Assn.,* 72 FRD 161, 164). The most that can be said regarding the Federal cases is that "the privilege '* * * remains largely undefined and has not generally been recognized' " *(Federal Trade Commn. v TRW, Inc.,* 628 F2d 207, 210, quoting *Lloyd v Cessna Aircraft Co.,* 74 FRD 518, 522). Moreover, the United States Supreme Court, in *United States v Young & Co.* (465 US 805), rejected policy arguments similar to those underlying the critical self-analysis privilege in holding that no privilege applied to work papers of independent auditors used in preparation of financial reports of publicly held corporations required under Federal securities laws.

In any event, since plaintiffs' actions are clearly governed by State and not Federal substantive law, State law would also determine the issue of privilege *(see,* Fed Rules Evid, rule 501). With the rarest of exceptions, and then only where there has been a strong showing that the harm to the public interest from disclosure outweighs the interest of the litigant seeking disclosure *(Cirale v 80 Pine St. Corp.,* 35 NY2d

113) or that disclosure would impair fundamental rights *(Matter of A. & M.,* 61 AD2d 426), New York courts have deferred to the Legislature as to the creation of any new evidentiary privilege. In our view, defendant has not shown any compelling circumstances here to depart from the generally restrictive policy against blocking the truth-seeking process in litigation by extension of the classes of privileged communications *(see, United States v Nixon,* 418 US 683, 709-710; *People ex rel. Mooney v Sheriff of N. Y. County,* 269 NY 291, 294-295). Notably, defendant has not shown that confidentiality is essential to the full maintenance of the relationship between it and the CPSC or that defendant's full candor with the CPSC, mandated in any event by statute, would be sufficiently enhanced by making its communications with that agency privileged to outweigh the benefits of the truth-seeking process from disclosure *(see, Matter of A. & M., supra,* at 434; *Witten v Smith & Co., supra,* at 452; *Scroggins v Uniden Corp.,* 506 NE2d 83, 86 [Ind]; *see also,* 8 Wigmore, Evidence § 2285, at 527-528 [McNaughton rev]). Accordingly, the order compelling disclosure should be affirmed.

MAHONEY, P. J., CASEY, YESAWICH, JR., and HARVEY, JJ., concur.

Order modified, on the law, with costs to plaintiffs, by extending the protective order to public disclosure of any information in the disclosed documents except at trial, and, as so modified, affirmed.