**STATE ex rel. KAWASAKI MOTORS CORP., U.S.A. and Kawasaki Motors Manufacturing Corp., Relators,**

v.

**The Honorable Brendan RYAN, Judge of the Circuit Court of the City of St. Louis, Missouri, Respondent.**

No. 56409.

Missouri Court of Appeals,
Eastern District,
Writ Division Six.

Aug. 8, 1989.

Richard A. Mueller, Dudley W. Von Holt, Coburn, Croft & Putzell, St. Louis, for relators.

James William Childress, Holtcamp, Liese, Hummel & Childress, P.C., St. Louis, David Alan Sosne, Mann, Poger, Wittner & Hereford, Clayton, for respondent.

SIMEONE, Judge.

I.

This is an original proceeding in prohibition brought by two of four defendants in the underlying case in which Jack L. Gruver and his wife Sharon K., brought an action for actual and punitive damages and loss of consortium for injuries sustained by Mr. Gruver in an accident involving an All Terrain Vehicle (ATV). Relators, Kawasaki Motors Corp., U.S.A., the wholesaler, and Kawasaki Motors Manufacturing Corporation, the manufacturer, seek to prohibit respondent from enforcing certain orders of respondent, compelling relators to respond to a broad range of requests for production of documents. ·We issued our preliminary order in prohibition on April 3, 1989. We now make such preliminary order permanent. We have jurisdiction. Mo. Const., Art. V, § 4.

Cutting through the labyrinth of all the pleadings, motions for production and to compel, memoranda in support thereof filed by the parties, affidavits, an evidentiary hearing, invectives by counsel directed to the adverse party and a host of other papers and matters, this case, basically involves the scope of discovery in a product liability case. It is one in which Mr. and Mrs. Gruver seek actual and punitive damages for injuries sustained on May 3, 1986, the day on which Mr. Gruver purchased the ATV in question from a retailer. He was seriously injured when the 1985 three-wheeler ATV,[1] model KXT 250–A2 Tecate, ran off the road, overturned and struck a tree. As a result, the Gruvers, on February 2, 1988, filed a petition in the circuit court of the City of St. Louis on the theories of strict liability, negligence and loss of consortium against the retailer, S & S Kawasaki Sales, and its owner, Richard Oxton, the wholesaler, Kawasaki Motors Corp., U.S.A. and the manufacturer, Kawasaki Motors Manufacturing Corporation. As to the theory of strict liability, the petition averred that the ATV had a "design and/or manufacturing defect" and was in "a defective condition unreasonably dangerous when put to a reasonably anticipated use" in several ways. The petition alleged, *inter alia* that (a) the rear axle was not perpendicular to the chassis, causing the 3–Wheeler to pull to the right when normally operated, (b) the ATV had a propensity to roll and capsize, (c) the drive chain bolt caused the rear axle to shift, (d) it had no roll-over protection structure, and (e) it had inherent instability and handling difficulty causing it to pull to the right and overturn. The petition further alleged that relators failed to warn of the defects and that while using the vehicle, the "condition of the bike caused the bike to run off the road and strike a tree."

On May 2, 1988, the underlying plaintiffs sought discovery by filing a "Request for Production." The Request is broad. It is attached hereto as an exhibit. Nineteen requests were made, some with several

---

**1.** The Tecate model is a 2–stroke, liquid cooled engine with front and rear disc brakes, adjustable front and rear gas shock absorbers, four way compression suspension system and has other features.

subparts. The Request sought numerous documents (a term broadly defined in the Request) and, among other matters, sought:

1. All documents relating to the development, testing and evaluation of any Kawasaki ATV, its early production, test reports and performance tests;

2. all documents relating to comparison of specifications of other manufacturer's ATVs;

3. copies of all depositions of all defendants' employees or expert witnesses conducted in any other case in the past seven years which involved an alleged injury with a three or four wheeler ATV;

4. all documents, including dealer bulletins pertaining to addition of or changes to various parts of any ATV;

5. all test manuals or data for testing [any] ATVs;

6. all documents, correspondence, and conference reports, relating to communications with the Consumer Product Safety Commission or the Department of Justice for all ATVs;

7. all documents, including drafts, notes, inter-office memoranda relating to the preparation of the owner's manual for any Kawasaki ATV;

8. the advertising budget for all Kawasaki three-wheel ATVs from 1980 to the present;

9. any and all consumer complaints, or dealer complaints relating to instability or hazard;

10. the names and addresses of all advertising agencies which have been involved in any way in advertising any Kawasaki ATVs from 1980 to the present;

11. all documents relating to users or profiles of users, or purchase habits of any three-wheel ATV or any make or model;

12. all strategy reports related in any way to any marketing plan or strategy;

13. each sales presentation or document for dealers or prospective purchasers or shown to dealers from 1979 to the present relating to all ATVs including film clips, bulletins, handouts, accessory lists, etc.;

14. all documents which passed between the distributor and dealer with respect to the ATV in question;

15. copies of all repair, service or assembly manuals for the KXT 250 series vehicles;

16. the face sheet from each insurance policy insuring liability;

17. copies of all applications for patents for any ATV or part thereof;

18. all documents relating in any way to the assembly or adjustment of all Kawasaki ATVs; and

19. copies of all documents reflecting the net worth of all defendants since 1980, including financial statements and documents evidencing retained earnings.

After objections were made by relators on June 20, 1988, a motion to compel and for sanctions was filed by the plaintiffs in the litigation. Memoranda were filed in support thereof. Affidavits were filed and on December 5, 1988, an evidentiary hearing was held on the motion.

Plaintiffs contended before the respondent that the requests for production of the documents were proper, relevant, not overbroad or burdensome and within the proper scope and philosophy of modern discovery. They contended that they are entitled to documents relating to all models of Kawasaki ATVs because they were substantially similar to the model involved in the accident and that Kawasaki has, through advertising, attempted to create an image of fun and safety. They relied on *Stengel v. Kawasaki Heavy Industries, Ltd.*, 116 F.R.D. 263 (N.D.Tex.1987) and other federal judicial decisions which they contended authorized the requests in their motion for production.

Relators, however, countered with the arguments that (a) the requests were not limited as to any time frame, (b) that the documents requested are not limited to similar models of the Kawasaki Tecate series, (c) the requests are not limited to similar circumstances of the accident which allegedly caused Mr. Gruver's injuries, (d) the requests violate certain privileges of the

relators, and (e) they are overbroad and burdensome.

Relators argued that the basic issue is whether they are required to produce documentation and information for ATV models other than the KXT 250–A2, Tecate, series involved in this accident and that plaintiffs seek discovery so as to "paint" all ATVs with the same broad brush in the hope that "some will splash over to this case as well."

An evidentiary hearing was held on the motion to compel, at which Franklin H. Johnson, an engineer, testified. His opinions centered around the problems associated with the handling and stability and overall safety of the machine. He indicated that he "needed" the information contained in the request for production of documents.

After the evidentiary hearing, the respondent issued his order on March 15, 1989. The order on the motion to compel denied the first two requests numbered 1 and 2 above, but sustained the motion to compel as to the remaining 17 requests, limiting, in a few instances but not all, the production of documents to the 3–wheeler ATV and not the 4–wheeler.

On March 22, 1989, relators filed their petition for a writ of prohibition and we issued our preliminary order on April 3, 1989.

In this action, relators contend that the respondent erred in granting plaintiffs' motion to compel because (1) such requests seek irrelevant documents concerning ATV models, alleged defects, and accident circumstances not substantially similar to those models involved in the underlying lawsuit, (2) such requests are not stated with reasonable particularity in that they seek documents relating to "any and all" matters, (3) request No. 19 seeks production of "all" documents "reflecting" relators' net worth, (4) request No. 3 seeks depositions taken in the past seven years of any employee or expert retained by relators in any case involving an ATV, (5) request No. 4 seeks documents relating to design changes or additions to ATVs after plaintiffs' accident which will be inadmissible at trial, (6) such requests for advertising budgets and marketing matters seek material which is irrelevant, (7) such requests violate relators' right to privacy and private information, and (8) such requests are overbroad and not reasonably calculated to lead to the discovery of admissible evidence in that no reasonable time restriction is placed on the documents sought.

Respondent, however, makes several points to sustain his order. Respondent contends that relators have failed to prove that there was an abuse of discretion because (1) there was substantial evidence that the information sought is relevant, is reasonably calculated to lead to the discovery of admissible evidence and because the information sought relating to all ATVs should be produced since the ATVs are allegedly "substantially similar," (2) the information sought has been identified with reasonable particularity or in the alternative the relators have failed to preserve that issue, (3) information with respect to relators' net worth is discoverable since punitive damages were sought, (4) other depositions and deposition exhibits are discoverable and will substantially promote and expedite discovery, (5) post-accident design changes and testing are discoverable, (6) advertising budgets, marketing plans and user surveys are reasonably calculated to lead to admissible evidence concerning malice, punitive damages and foreseeability, (7) relators have failed to show why a protective order is required, and (8) no time restriction should be imposed due to the nature and complexity of the issues.

Respondent has moved to strike certain affidavits filed as exhibits J and K. The motion is granted. We find that the matters contained in the affidavits are not essential to the resolution of this proceeding or are reassertions of matters already in the record.

## II.

It is not necessary to analyze and thoroughly discuss the validity and merits of each and every request for the production of documents filed by the underlying plaintiffs. To do so would unduly prolong this opinion.

As a preliminary matter, however, it may be said that ever since the landmark decision of *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) which interpreted the original discovery rules in the federal system, the whole philosophy of pre-trial procedure has undergone a metamorphosis. Missouri has, for all practical purposes, adopted the federal rules and the modern philosophy of pre-trial discovery almost verbatim. We have come a long way since the days of the "sporting theory of justice." The modern philosophy of pre-trial discovery is salutary and performs important and legitimate functions. The benefits of pre-trial discovery are numerous: liberal discovery aids in the ascertainment of truth, surprise is eliminated, issues are narrowed, trial preparation is facilitated, and "relevant" information is obtained. *See generally,* 8 Wright & Miller, *Federal Practice and Procedure,* § 2001 (1970) and 4 J.W. Moore, *Federal Practice,* § 26.02 at 26–58.1 *et seq.,* and Mo. Bar CLE, *Missouri Civil Procedure,* 56–1 *et seq.* (1988).

Missouri courts have recognized that the rules relating to discovery were designed to eliminate, as far as possible, concealment and surprise in the trial of lawsuits, *Combellick v. Rooks,* 401 S.W.2d 460, 464 (Mo. banc 1966), and to provide a party with access to anything "relevant" to the proceedings and subject matter of the case which are not protected by privilege. *State ex rel. Danforth v. Riley,* 499 S.W.2d 40, 42 (Mo.App.1973).

It is recognized that the trial court is vested with broad discretion in administering the rules of discovery. *Klein v. General Elec. Co.,* 714 S.W.2d 896, 906 (Mo.App. 1986), and the appellate court should not disturb the rulings absent an abuse of discretion. *State ex rel. Kuehl v. Baker,* 663 S.W.2d 410, 411 (Mo.App.1983); *State ex rel. Norfolk & Western Co. v. Dowd,* 448 S.W.2d 1, 4 (Mo. banc 1969).

■ But when a trial court makes an order in discovery proceedings which exceeds its jurisdiction or is an abuse of discretion, prohibition is the proper remedy. *State ex rel. Anheuser v. Nolan,* 692 S.W.2d 325, 327 (Mo.App.1985); *State ex rel. Papin v. Litz,* 734 S.W.2d 853, 863 (Mo.App.1987); *State ex rel. Whiteacre v. Ladd,* 701 S.W.2d 796, 797 (Mo.App.1985).

Despite all the beneficial aspects of our modern rules of discovery, they are not talismans without limitations. In recent years, numerous studies and reports have been written, and amendments to the Federal Rules of Civil Procedure have been made, in order to keep the limits of discovery within some reasonable bounds.[2] *See* Rule 26(a)(b) and (g); 4 Moore, *supra,* § 26.02[3] at 26–61–63. *See also, Herbert v. Lando,* 441 U.S. 153, 99 S.Ct. 1635, 1649, 60 L.Ed.2d 115 (1979) and *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct.1917, 1928, 44 L.Ed.2d 539 (1975). While our Supreme Court has not, as yet, revised subparagraph (g) of Rule 56.01 to conform to Fed.R.Civ.Proc. 26, in these respects, our Missouri decisional law has, in effect, recognized that there are limits upon the broad scope of discovery.

In *Keller v. International Harvester Corp.,* 648 S.W.2d 584 (Mo.App.1983), the Western District, in a product liability action involving a lawn mower, denied discovery and recognized that the interrogatories propounded[3] failed to postulate conditions substantially similar to the accident in suit and did not restrict accidents to those involving "the same model and design" as the mower in the accident. The court said "some of the accidents included in the reports could well have resulted from entirely different mower models and under en-

---

2. A plethora of scholarly articles have been published concerning the trend of the limitations upon the discovery process. *See* 8 Wright & Miller, *supra,* 1988 Supp. at 4–6 and F. Hare & W. Remine, *Abuse of Discovery in Products Liability Cases,* 1988 S.M.U., Products Liability Institute (1988); *see also,* the recent study of The Foundation for Change, Inc., in which strong support for limitations was given by nearly all of 1,000 lawyers and judges. *St. Louis Daily Record,* Apr. 12, 1989, p. 1.

3. The interrogatory propounded was: "List all incidents, claims or lawsuits alleging damages, injuries or deaths reported to [defendant] resulting from projectiles thrown from rotary power mowers since January 1, 1961, when the Cadet series was first produced."

tirely different conditions...." *Keller, supra,* 648 S.W.2d at 589.

In *State ex rel. Whiteacre v. Ladd, supra,* this court held that a subpoena commanding a physician to bring "all calendars, appointment books, ledgers, notebooks or the like" which recorded the physician's court testimony, depositions, office examinations and charges for services, was so "broad as to be defectively oppressive, burdensome and intrusive." We concluded stating:

> This is another example of [a] party's overreaching in pretrial discovery proceedings ... into a 'war of paper' and 'it is the affirmative duty and obligation of trial judges to prevent such subversion.' To that statement of judicial duty we would add that it is also the duty of trial counsel to exercise judgment in formulating discovery requests by realizing there is a limit to the paperwork burden which may be saddled upon the other party or his witnesses.

*Ladd, supra,* 701 S.W.2d at 799.

And in *State ex rel. Anheuser v. Nolan, supra,* a case involving a request for tax returns for six years and other documents, we used clear and unequivocal language to indicate that discovery has its limits, and urged trial judges to exercise their affirmative duty and obligation to prevent a "war of paper." We recognized the broad discretion of trial judges, but noted that that discretion has never been viewed as unlimited. We then said:

> Determination of the appropriate boundaries of discovery requests involves 'the pragmatic task of weighing the conflicting interests of the interrogator and the respondent.' Therefore, in ruling upon objections to discovery requests, trial judges must consider not only questions of privilege, work product, relevance and tendency to lead to discovery of admissible evidence, but they should also balance the need of the interrogator to obtain the information against the respondent's burden in furnishing it. Included in this burden may well be the extent of an invasion of privacy.... Thus, even though the information sought is properly discoverable, upon objection, the trial court should consider whether the information can be adequately furnished in a manner less intrusive, less burdensome or less expensive than that designated by the requesting party....

*Nolan, supra,* 692 S.W.2d at 328.

■ These principles of limitations in the discovery process apply to this proceeding. We believe that under the circumstances, the interrogatories here are defectively overbroad, oppressive, burdensome and intrusive and that the order of the trial court sustaining the motion to compel should be prohibited. We hold that our preliminary order in prohibition should be made permanent.

Some examples showing that the "Request For Production" is overbroad, burdensome and oppressive will suffice. A number of the requests are not limited by time considerations relating to the manufacture of the Tecate, other matters, or to the same or similar Tecate models, KXT 250-A1, KXT 250-A2, or KXT 250-A3, but are applicable to any and all models. (*E.g.,* requests 3, 4, 5, 7 and 8). *See Keller, supra.* Discovery of the Kawasaki line of ATVs in the order of respondent includes 38 different models. All these models are designed for different purposes and, while they have some common characteristics, they are not "substantially similar." There are many differences between the various models. Many requests are overbroad and vague, *e.g.* requests Nos. 4, 10 and 11— seeking all dealer bulletins pertaining to changes, seeking the names of all advertising agencies which have "been involved in any way in advertising any Kawasaki"; seeking documents relating to users or "profiles" of users or "purchase habits" of users; and seeking marketing and sales plans. Furthermore, the requests are not limited to the same or similar circumstances of the accident at issue, or the alleged defective components or complaints regarding similar mishaps. *See Keller v. International Harvester Corp., supra,* 648 S.W.2d at 589; 63 Am.Jur.2d, *Products Liability,* §§ 239 and 240 at 271; *annot.,*

20 A.L.R.3d 1430 (1968); Note, *The Admissibility of Similar Incidents in Product Liability Actions*, 53 Mo.L.Rev. 547 (1988); *McJunkins v. Windham Power Lifts, Inc.*, 767 S.W.2d 95 (Mo.App.1989)—discussion of the admissibility of no prior accidents.

■ While it may well be proper, under the rules of discovery, to obtain information concerning other prior injuries or complaints caused by the product, the discoverability of such other complaints is limited to the same or similar model. *See Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73 (D.C.Mass.1976); *Warn Industries v. Geist*, 343 So.2d 44, 46 (Fla.App.1977); *annot.*, 20 A.L.R.3d 1430, 8 Wright & Miller, *supra*, § 2009 at fn. 50; *Josephs v. Harris Corp.*, 677 F.2d 985, 991 (3rd Cir.1982).

■ The request for all depositions of all employees or expert witnesses taken in any other case is defective and inconsistent with *Ladd, supra*. Experts may be deposed and are not subject to requests for production of documents. *State ex rel. Mo.*

*Hwy. & Transp. v. Dooley*, 738 S.W.2d 457, 466 (Mo.App.1987).

In short, the request made in this case is overbroad, burdensome and oppressive because the request is not (1) limited to the time frame in which the three-wheel Tecate model series was manufactured, (2) limited to the production model of the three-wheel Tecate series involved and the allegedly defective components at issue; (3) limited to the issues raised in the petition and the alleged defects asserted therein; (4) in conformity with judicial decisions relating to (a) other complaints or accidents under the same or similar circumstances and occurrences [4] within the parameters of the petition and limited to the same or similar product model containing the same allegedly defective components; (b) the discoverability of net worth [5]; (c) privileged matters which may invade the relators' privilege of "critical self-analysis" [6]; and (d) the discoverability of subsequent repairs or design changes made in the Tecate model series.[7]

**4.** *See Keller v. International Harvester Corp., supra*, 648 S.W.2d 584; *Gosewisch v. American Honda Motor Co.*, 153 Ariz. 389, 737 P.2d 365 (1985), *vac. in part on other grounds*, 153 Ariz. 400, 737 P.2d 376 (1987); *Toyota Motor Corp. v. Greene*, 483 So.2d 130 (Fla.App.1986)—complaints limited to similar circumstances; *Mazda Motor Corp. v. Quinn*, 524 So.2d 1021 (Fla.App. 1988).

**5.** *State ex rel. Kubatzky v. Holt*, 483 S.W.2d 799, 803 (Mo.App.1972); *Cobb v. Superior Court For Los Angeles County*, 99 Cal.App.3d 543, 160 Cal. Rptr. 561, 566–67 (1980); *Rupert v. Sellers*, 48 A.D.2d 265, 368 N.Y.S.2d 904, 913 (App.Div. 1975)—documents limited to earnings, tax returns, stipulations or financial statements.

**6.** *See Roberts v. Carrier Corp.*, 107 F.R.D. 678, 684–685 (D.C.Ind.1985); *O'Connor v. Chrysler Corp.*, 86 F.R.D. 211, 218 (D.Mass.1980); *Gillman v. United States*, 53 F.R.D. 316, 318 (S.D.N. Y.1971). *Cf.*, *Lamitie v. Emerson Elec. Co.*, 142 A.D.2d 293, 535 N.Y.S.2d 650 (A.D. 3 Dept.1988).

**7.** Missouri adheres to the doctrine that subsequent repairs or post-accident changes made after an accident are inadmissible to prove negligence. *Hickey v. Kansas City Southern Railway*, 290 S.W.2d 58, 61 (Mo.1956); *Bellistri v. City of St. Louis*, 671 S.W.2d 405, 407 (Mo.App. 1984). But whether that rule is applicable to product liability has not been definitively decid-

ed. *See Tennis v. General Motors Corp.*, 625 S.W.2d 218, 232 (Mo.App.1981); *Wilson Court, Inc. v. Teledyne Laars*, 747 S.W.2d 239, 243 (Mo.App.1988). Many decisions now hold that subsequent repairs and modifications are admissible at trial in strict liability cases. *Unterburger v. Snow Co.*, 630 F.2d 599 (8th Cir.1980); *Ault v. International Harvester Company*, 13 Cal.3d 113, 117 Cal.Rptr. 812, 528 P.2d 1148 (1974); *see* J. Low, *Federal Rule of Evidence 407* and *Strict Products Liability—The Rule Against Subsequent Repairs Lives On*, 40 J. of Air Law and Comm. 887 (1983); *Cf.*, Schwartz, *The Exclusionary Rule on Subsequent Repairs—A Rule in Need of Repairs*, 7 Forum 1 (1971). Most decisions, however, hold to the rule that subsequent repairs or modifications are not admissible and hence not discoverable. *See* J. Low, *supra*; *Troja v. Black & Decker Mfg. Co.*, 62 Md.App. 101, 488 A.2d 516, 521–23 (1985), *cert. den.*, 303 Md. 471, 494 A.2d 939 (1985); *Cann v. Ford Motor Co.*, 658 F.2d 54, 59–60 (2nd Cir. 1981), *cert. den.*, 456 U.S. 960, 102 S.Ct. 2036, 72 L.Ed.2d 484 (1982); *see annot.*, 74 A.L.R.3d 1001; McCormick, *Evidence*, § 275 (3rd ed. 1984). Pre-trial discovery may well be obtained if subsequent design or repairs are sought for purposes other than showing culpability, such as ownership, control, or impeachment. *Cann, supra*, 658 F.2d at 59; *Troja, supra*, 488 A.2d at 523; 4 Moore, *supra*, § 26.56[1] at 26–109; 8 Wright and Miller, *supra*, § 2009, 1988 Supp. at 35–36.

Respondent submits that all the ATV models have similar defects regarding handling, stability, maneuverability and design and are substantially similar so that the information sought as to all ATVs is discoverable and that discovery is not limited to the year and model involved in the accident, but to different models and year products. Respondent relies upon a number of federal decisions. *Stengel v. Kawasaki Heavy Industries, Ltd.*, 116 F.R.D. 263 (N.D.Tex.1987); *Culligan v. Yamaha Motor Corp. U.S.A.*, 110 F.R.D. 122 (S.D. N.Y.1986); *Swain v. General Motors Corp.*, 81 F.R.D. 698 (W.D.Pa.1979); *Josephs v. Harris Corp.*, 677 F.2d 985 (3rd Cir.1982); *Bowman v. General Motors Corporation*, 64 F.R.D. 62 (E.D.Pa.1974); *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613 (5th Cir.1977); *Bates v. Firestone & Rubber Co., Inc.*, 83 F.R.D. 535 (D.S.C. 1979); *Uitts v. General Motors Corporation*, 58 F.R.D. 450 (E.D.Pa.1972); *Carpini v. Pittsburgh & Wierton Bus. Company*, 216 F.2d 404 (3rd Cir.1954). Respondent argues that case law authorizes discovery of other models when the models are substantially similar to those involved in the accident, and that since all models possess similar handling and stability qualities, present similar hazards and risks due to alleged instability, handling, control and maneuverability, the information sought is discoverable.

The respondent argues that the court in *Stengel v. Kawasaki Heavy Industries, Ltd., supra*, ordered Kawasaki to produce documents for all ATVs and that *Stengel* is persuasive, if not controlling. We do not read *Stengel* so broadly. The order had to do with the voluntary production of test reports for all Model 200 series ATVs manufactured by Kawasaki, and the attorney representing defendants assured the court that the client had produced all reports without limitation to a particular model. This had not been done because of a "slip-up." We believe *Stengel* is not controlling. Neither do we construe the federal decisions relied upon by plaintiffs, *e.g. Swain v. General Motors Corp., supra; Uitts v. General Motors Corp., supra; (Uitts I);*

and *Bowman v. General Motors Corp., supra;* as broadly as the plaintiffs assert.

In *Culligan v. Yamaha Motor Corp., USA, supra*, the plaintiff Culligan was injured when a Yamaha ATV Model YT–225 flipped over. He contended that both the vehicle was inherently unstable and therefore defective and that Yamaha failed to provide appropriate warnings regarding its use. Yamaha moved for a protective order exempting from discovery three categories of documents requested by Culligan. The first category included information about testing, research and development on vehicles that took place after the manufacture of the model at issue. Second, Yamaha sought to exempt from discovery, information with respect to tests done on models other than Model YT–225 prior to the manufacture of that model. Finally, Yamaha sought to withhold all communications between it and the Consumer Products Safety Commission. The court held that none of the information sought was exempt from disclosure. The court stated that research and development information regarding post-manufacture testing of other vehicle models was discoverable, "unless it is demonstrated that the other models are so dissimilar that testing information would not likely to lead to evidence germane to the defect alleged...." 110 F.R.D. at 124. The court noted that discovery of information relating to similar, if not identical, models is permitted in product liability cases citing *Dollar, supra, Swain, supra,* and *Uitts (I), supra*. The vehicle involved in Culligan was a YT–225 model. The decision was based on the fact that the record revealed no pertinent differences between the model in issue and other models. In the proceeding at bar, the Tecate, is not so substantially similar to all the other models so as to make information concerning all other models discoverable.

Other decisions are distinguishable. They emphasized the similarity of the products. *See e.g., Josephs v. Harris Corp., supra.*

Furthermore, the federal decisions comport with the federal pleading philosophy of notice pleading as distinguishable from

Missouri fact pleading. *See* discussion in *State ex rel. Papin v. Litz, supra,* 734 S.W.2d at 853.

### III.

In view of the above, we conclude that the Request for Production in this case is overbroad, and the trial court exceeded its jurisdiction in sustaining the motion to compel answers to the request for production of documents filed in its present form. Respondent is directed to set aside his order of March 15, 1989, sustaining the motion to compel but without prejudice to the filing of a more narrowly limited request for production. Our preliminary writ is made permanent.

GRIMM, P.J., and CARL R. GAERTNER, J., concur.

### APPENDIX

In the Circuit Court of the City of St. Louis

State of Missouri

Cause No. 882–00325

Div. No. 1

Jack L. Grover and Sharon K. Grover, Plaintiffs,

v.

Oxton's Kawasaki Sales, d/b/a S & S Kawasaki, Kawasaki Motors Corp. U.S.A., Kawasaki Motors Manufacturing Corp. U.S.A., and Rick Oxton, Defendants.

### REQUEST FOR PRODUCTION

TO: OXTON'S KAWASAKI SALES, d/b/a S & S KAWASAKI; KAWASAKI MOTORS CORP. U.S.A., KAWASAKI MOTORS MANUFACTURING CORP. U.S.A. and RICK OXTON, by serving their attorneys of record, John R. Musgrave, Richard A. Mueller, Mark A. Bayles, COBURN, CROFT & PUTZELL, One Mercantile Center, Suite 2900, St. Louis, Missouri, 63101 and James W. Childress, 818 Olive Street, Suite 1210, St. Louis, Missouri, 63101.

COMES NOW Plaintiffs herein, and pursuant to Missouri Rules of Civil Procedure, requests the Defendants to produce the requested documents listed below no later than twenty (20) days after the date of service hereof, at the offices of Plaintiff's attorneys of record, and permit Plaintiff to inspect and copy same.

As used herein and unless the context otherwise requires, the term "documents" shall mean all writings of any kind, including the originals and non-identical copies, whether different from the originals without limitation, forms, records, blueprints, drawings, plans, renderings, specifications, correspondence, memoranda, notes, diaries, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, statements, receipts, returns, summaries, pamphlets, books, prospectuses, inter-office and intra-office communications, offers notations of any sort of conversations, telephone calls, meetings, or other communications, bulletins, printed matter, computer printouts, teletypes, telefax, invoices, worksheets, and all drafts, alterations, modifications, changes and amendments of any of the foregoing graphic or aural records or representations of any kind (including without limitation photographs, charts, graphs, microfiche, microfilm, videotape, recordings, motion pictures) and electronic, mechanical or electrical records or representations of any kind (including without limitation tapes, cassettes, discs, recordings).

"Documents" or "records" as those words are used hereinabove mean any written, graphic, or printed matter in the actual or constructive possession, custody, care or control of the Defendant, including, but not limited to, originals of correspondence, telegrams, notes or sound recordings of any type of personal or telephone conversations or of meetings or conferences, minutes of meetings, memoranda, notes, interoffice communications, studies, analyses, reports, records, results of investigations, statements of witnesses, photographs, videotapes, motion pictures, filmstrips, slides, microfiche or microfilm records, microscopic evidence, reviews, contracts, licenses, design drawings, engineering drawings or

calculations, agreements, ledgers, books of account, vouchers, bank checks, invoices, charge slips, hotel charges, receipts, freight bills, papers, statistical reports, cause sheets, abstract of bids, stenographers' notebooks, desk calendars, appointment books, diaries, time sheets or logs, maps, computer data, index systems and job or transaction files, or papers similar to any of the foregoing, or drafts of any of the foregoing. All documents or other items as listed below:

1. Any and all documents relating to the development, testing and evaluation of any Kawasaki ATV, its prototype, early production model and developmental models, including, but not limited to, test reports, comparisons, comparative analysis, evaluations, design drawings and other documents relating to group sessions and discussions, and any and all documents discussing or pertaining to performance tests, preproduction tests and postproduction tests conducted on any Kawasaki ATV, and all design drawings, engineering drawings and specifications, including ECO's for any Kawasaki ATV.

2. Any and all documents relating to comparison of specifications of any Honda, Yamaha or Suzuki with any actual or proposed Kawasaki ATV and comparisons or comparative analysis of any Kawasaki ATV or any other manufacturer's all terrain vehicles.

3. Copies of all depositions of all defendants' employees or expert witnesses conducted in any other case in the past seven years which involved an alleged injury and an ATV (three or four wheel). This is to include deposition exhibits.

4. Any and all documents including, but not limited to, dealer bulletins pertaining to the addition of or changes to suspension system, tires, handlebars, wheels, wheelbase, seat, axle chassis, drive chain, drive chain adjustment belt, or drive train on any ATV.

5. Any and all test manuals or data used for testing prototypes or production models of ATV's.

6. Copies of any and all documents relating to communications with the Consumer Product Safety Commission, or the De-partment of Justice, including, but not limited to, all correspondence to or from the Commission or the Department of Justice, and copies of all documents delivered to the Consumer Product Safety Commission or the Department of Justice pertaining in any way to all terrain vehicles and copies of any and all conference reports relating in any way to all terrain vehicles between any defendant and any advertising agency and any defendant and the CPSC or De-partment of Justice.

7. All documents relating to the preparation of the owner's manual for any Kawasaki all terrain vehicle, including, but not limited to, drafts of the owner's manual, inter-office memoranda or other written communications regarding its contents, notes or other writings of persons involved in either writing the owner's manual or contributing information for it, and notes or minutes of any meetings regarding the drafting of that document.

8. The advertising budget for all Kawasaki three-wheel ATV's, including documents specifying monies spent in different areas concerning the products, statements indicating the amounts paid and to whom, and budget reports from 1980 through the present.

9. Copies of any and all consumer complaints, complaints from dealer and former dealers relating to the instability of, hazard associated with, or any alleged defect of any ATV three-wheel vehicle, or wherever tip-over was alleged.

10. The names and addresses of all advertising agencies or other individuals, business or entities that have been involved in any way in advertising any Kawasaki all terrain vehicles from 1980 to the present.

11. Any and all documents related to or containing any information related to:

a) Users of an/or profiles of users of any three wheel all terrain vehicles of any make or model.

b) Demographic data of any kind related in any way to any three wheel all terrain vehicle of any make or model.

c) Purchase habits and/or usage or user habits for any three wheel all terrain vehicle of any make or model.

d) Any studies and/or evaluations of users and/or purchase habits and/or usage habits for any all terrain vehicles of any make or model.

e) Any studies and/or evaluations of accidents involving any three wheel all terrain vehicles of any make or model which study and/or evaluation contained any data or any information compared or contrasted in any way to user habits, purchase habits, usage profiles and/or user profiles.

f) Any and all vehicle user surveys or studies relating to all terrain vehicles.

12. Any and all strategy reports or documents related thereto, including any and all documents and/or information or material of any kind, related in any way to any marketing plan, marketing strategy, sales plan or sales strategy relative to any all terrain vehicle manufactured, sold or distributed by Kawasaki from 1980 to the present.

13. Each sales presentation, document, specification, document option list prepared for dealers or prospective purchasers. Copies of any and all documents that were provided or shown to dealers from 1979 through the present that relate to all terrain vehicles, including, but not limited to, the following:

a) Any film clip, slide presentation, cassette or 8mm promotion or the like

b) Model brochures and handouts

c) Bulletins

d) Parts cards

e) Accessory lists, etc.

14. Copies of all documents which passed between distributor and the selling dealer with respect to model No. KXT 250, serial No. JKAXTMA 16FB513569, beginning with the original shipment of this vehicle to the selling dealer, including inspection, registration and warranty, owners' manual, instructions or warnings, etc.

15. Copies of all repair, service or assembly manuals for the model KXT 250 series vehicles.

16. The face sheet from each insurance policy which insures you from liability for the damages arising from the occurrence and which reflects the limits of insurance of each such policy.

17. Copies of all applications for patents for any ATV or part thereof.

18. Copies of all documents relating in any way to the assembly or any adjustment of all Kawasaki ATV's.

19. Copies of all documents reflecting the net worth of all Defendants from 1980–present including, but not limited to, financial statements and documents evidencing retained earnings of each Defendant.

Dated this 2nd day of May, 1988.

Respectfully submitted,

MANN, POGER, WITTNER & HEREFORD

7711 Carondelet, Suite 401

St. Louis, Missouri 63105

314/862–3535

By [Signature]

Howard A. Wittner # 17408

David A. Sosne # 28365

Donald B. Balfour # 28387

Nancy J. Stone

TEMPLETON & GARNER

P.O. Box 12075

Amarillo, TX 79101

806/376–4641

ATTORNEYS FOR PLAINTIFF