STATE of Missouri, ex rel., Pierre
L. LaBARGE, Jr., Relator,

v.

The Honorable Patrick CLIFFORD,
Judge, Circuit Court of St. Louis
County, Missouri, Respondent.

No. 74592.

Missouri Court of Appeals,
Eastern District,
Writ Division VII.

Aug. 18, 1998.

Rehearing Denied Oct. 26, 1998.

Leo V. Garvin, Jr., Garvin & Maloney, Clayton, for relator.

Donald R. Carmody, Carmody, MacDonald, Hilton, Wolf & Keast, Clayton, for respondent.

GARY M. GAERTNER, Judge.

Relator, Pierre L. LaBarge, Jr., filed a petition for a writ of prohibition to prevent respondent from taking further action in the underlying suit filed by Pauline LaBarge (hereinafter "plaintiff") for a declaration of the parties' rights under relator's living trust, for an accounting of the same, and for breach of a contractual obligation. Respondent filed suggestions in opposition. In the interest of justice, as permitted by Rule 84.24, we dispense with a preliminary order, answer, further briefing and oral argument, and now issue a peremptory writ of prohibition and direct respondent to set aside the July 6, 1998 order and limit the scope of discovery as provided herein. *See State ex rel. Rodriguez v. Baker*, 927 S.W.2d 961, 962 (Mo.App.E.D.1996).

Plaintiff is the former wife of relator. They were divorced pursuant to a decree dated December 27, 1989. The decree incorporated by reference a Settlement Agreement (the "Agreement") which was entered into by plaintiff and relator. According to the terms of the Agreement, relator owed plaintiff $400,000 and was to make monthly payments to plaintiff from his Living Trust, which at the time of the decree was encumbered by $3 million in debt. The details of said monthly payments are as follows; the relator was to pay plaintiff $2000 per month until 1993 when the amount of the payments increased to $2,666.66 per month. Relator has paid approximately $230,000 of his debt to plaintiff and is current on the monthly payments.

The Agreement further provided when the indebtedness on the Living Trust was reduced to $400,000 or less, plaintiff would be entitled to receive accelerated payments of the principle balance due to her. Further, when the common stock of LaBarge, Inc., which was held in the Living Trust, became unincumbered by debt, plaintiff would receive $100,000 worth of LaBarge, Inc. com-

mon stock at its then current market rate. As of April 1998, the indebtedness on the Living Trust totaled approximately $1.6 million. Therefore, under the terms of the Agreement, plaintiff had not received any accelerated payments nor the common stock award.

Plaintiff filed a three count petition against relator. In Count I, plaintiff sought a declaratory judgment, asking for proof the Living Trust was amended as required by the decree, an order directing relator to identify the assets of said trust, an order directing relator to provide plaintiff with information relative to the indebtedness against the trust, as well as a declaration of the parties' rights and obligations as they relate to the Living Trust, and attorney's fees. In Count II, plaintiff sought an accounting of the Living Trust assets, the indebtedness incurred by the Trust, and the actions of relator to extinguish the indebtedness. In Count III, plaintiff brought a breach of contract claim, contending relator's failure to pay off the indebtedness against the Living Trust was in bad faith and "thwarted plaintiff's receipt of the remaining balance on the $400,000 currently owed to plaintiff and the receipt of $100,000 in LaBarge, Inc. stock, as provided in the parties' Agreement."

In response, relator filed a Motion for Summary Judgment wherein he claimed he was entitled to judgment as a matter of law because the level of his indebtedness had not reached the threshold level described in the Agreement, and because plaintiff was not entitled to an accounting. Plaintiff did not reply to the Motion for Summary Judgment other than to seek additional time in order to take relator's deposition.

On May 22, 1998, relator filed a Motion to Stay Discovery until the trial court ruled on the pending Motion for Summary Judgment. Relator offered to comply with limited discovery requests to enable the trial court and plaintiff to verify the amount of relator's indebtedness. Relator argued the documents sought by plaintiff would improperly provide her with an accounting before the trial court determined she was entitled to one. On June 11, 1998, respondent denied

relator's Motion to Stay Discovery without opinion.

Plaintiff then filed a notice to take relator's deposition on July 2, 1998. Plaintiff attached a subpoena *duces tecum* to the Notice of Deposition, by which she sought the production of the following documents:

1. Copy of Defendant's indenture of trust ("Trust") dated July 10, 1984 and all amendments.

2. Copies of all instruments in possession of Defendant evidencing all Trust assets as of December 5, 1989 and all additions and withdrawals since that date.

3. Copies of all documents indicating amount of LaBarge, Inc. common stock owned by Defendant individually and/or jointly with Polly LaBarge and/or held in the Living Trust dated July 10, 1984, and/or in any other trust established by Defendant or for which Plaintiff is a beneficiary.

4. Copies of any and all Trust financial statements, including balance sheets, income and expense statements, profit and loss statements from 1984 to the present date.

On July 2, 1998, relator did not appear at the scheduled deposition and filed the instant petition for a writ of prohibition. Relator contends respondent should be prohibited from ordering relator to produce the documents set forth in the subpoena duces tecum until plaintiff has demonstrated she is entitled to an accounting. Further, relator contends the scope of the discovery order should be limited to a verification of the levels of his indebtedness from the time of the decree of dissolution to the present time, and such discovery should be subject to a reasonable protective order limiting plaintiff's use and dissemination of the information to the preparation and presentation of claims in the current lawsuit.

Plaintiff filed a motion for sanctions for relator's failure to appear for the deposition scheduled on July 2. On July 6, 1998, respondent ruled on said motion and ordered relator to appear for deposition set for July 15, 1998. This court issued a peremptory writ of prohibition on July 14, 1998, setting aside respondent's July 6 order and granting relator's request for a writ of prohibition.

It is well settled in Missouri that the trial court is to address and resolve the question of whether a plaintiff is entitled to an accounting before proceeding to hear evidence relating to the actual accounting. *State ex rel. Rowlett v. Wilson*, 574 S.W.2d 376, 378 (Mo.banc 1978); *Adams v. Adams*, 294 S.W.2d 18, 21 (Mo.1956).

In *Rowlett*, the supreme court addressed the issue of discovery in actions for accounting. The court said:

> Since an accounting suit will be tried in two stages, the first a determination of the right to an accounting and the second the actual accounting if a right thereto is found to exist, it makes sense to defer an extensive discovery as to the actual accounting until the right thereto has been established. **We are confident that trial courts will not require extensive discovery concerning details of an actual accounting between parties until they have determined that an accounting will be ordered.**

*Id.* at 378 (emphasis added). A trial court is vested with broad discretion in administering the rules of discovery. *State v. Ryan*, 777 S.W.2d 247, 251 (Mo.App.E.D.1989). An appellate court will not disturb the trial court's ruling absent an abuse of discretion. *Id.* However, when a trial court makes an order in discovery proceedings which exceeds its jurisdiction or is an abuse of discretion, prohibition is the proper remedy. *Id.*

Determining the appropriate scope of discovery requests involves "the pragmatic task of weighing the conflicting interests of interrogator and the respondent." *State ex rel. Anheuser v. Nolan*, 692 S.W.2d 325, 328 (Mo.App.E.D.1985). The trial court must not only consider questions of privilege, work product, relevance, and the tendency of the request to lead to discovery of admissible evidence, it must also balance the need of the interrogator to obtain the information against the responding party's burden in furnishing it, including the extent to which the request will be an invasion of privacy. *Id.*

In the matter before us, plaintiff has requested all instruments evidencing the Living Trust assets as of December 5, 1989, to present, as well as stock certificates and financial statements along with other items dating from July 10, 1984, to present. As relator has placed all of his assets in a Revocable Living Trust, the above request would require production of an untold number of documents pertaining to the purchase, sale, and disposal of any and all trust assets for the last fifteen years. We agree with relator's argument that to order the production of these documents without restriction or limitation would, in effect, provide plaintiff with an accounting before the court determines she is entitled to such.

Additionally, plaintiff has requested a copy of the trust dated July 10, 1984, and all subsequent amendments. This request also encompasses a five year period which predates the parties' Agreement. Although plaintiff is entitled to proof of the amendments to the Living Trust as per the Agreement's provisions, that proof is related solely to amendments made after the date of Agreement which have the effect of securing relator's payments to plaintiff upon his death. The requests for discovery of documents that predate Agreement are temporally overbroad.

With respect to plaintiff's breach of contract claim, plaintiff argues relator breached his duty under the Agreement. However, the only support plaintiff cites is a mere restatement of a fundamental principle in contract law that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." *Martin v. Prier Brass Mfg. Co.*, 710 S.W.2d 466, 473 (Mo.App.W.D.1986) (citing Restatement (Second) of Contracts section 205 (1981)). Plaintiff does not allege specific facts which would allow one to infer relator has not acted in good faith. Rather, plaintiff asserts relator has not sufficiently reduced the debt on the Trust, thereby denying her right to payment and breaching the agreement. The language of the Agreement is detailed and unambiguous. Nothing in the Agreement requires relator to reduce the indebtedness at any certain rate or by any certain means in order to accelerate plaintiff's payments. If the parties had intended such they could have expressed that intent in the Agreement. Instead, the terms of the Agreement between relator and plaintiff merely provided when the indebtedness reached $400,000 as to the Living Trust, and $0 as to the common stock, plaintiff would be entitled to accelerated payments and $100,000 worth of common stock. The debt at the time of the agreement was $3 million. As of April 1998, the debt had been reduced to $1.6 million, illustrating relator reduced the amount of debt by almost half. Plaintiff's request for production of all instruments evidencing all trust assets for the past nine years, and all trust financial statements, including balance sheets, income and expense statements, and profit and loss statements for the past fifteen years is overbroad in both time and manner.

Accordingly, we issue a peremptory writ of prohibition prohibiting respondent from enforcing plaintiff's subpeona *duces tecum* as written, ordering respondent to set aside the July 6, 1998 order, and ordering respondent to enter an order authorizing appropriate discovery in accordance with this opinion.

CRANDALL and RICHARD B. TEITELMAN, JJ., concur.