**WILSON COURT, INC., Appellant,**

**v.**

**TELEDYNE LAARS, Respondent.**

**No. WD 38979.**

Missouri Court of Appeals,
Western District.

Jan. 26, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 1, 1988.

Application to Transfer Denied
April 19, 1988.

Robins, Zelle, Larson & Kaplan, Minneapolis, Minn., and Hulverson, Hulverson & Frank, Inc., St. Louis, for appellant.

Don B. Roberson, Kansas City, for respondent.

Before PRITCHARD, P.J., and GAITAN and COVINGTON, JJ.

PRITCHARD, Presiding Judge.

Appellant's motel complex was substantially destroyed by fire on November 27, 1979. The complex consisted of guest rooms, and an indoor pool and sauna for guests of the entire complex, and had been open for about a year. The indoor pool was heated by a pool heater, Model DR–250, designed and manufactured by respondent.

The case was submitted to the jury upon the theory of strict liability in tort and failure to warn of a defect in the pool heater. At the trial, the claimed defect was that respondent furnished the heater which lacked an installation of a "fusible link". That device is designed to break electrical connections when a "flame roll-out" occurs which would damage or short circuit electrical wiring and cause the heater, which would be without a water supply, to overheat and possibly cause a fire. The jury returned a verdict for respondent on appellant's claim upon which judgment was entered.

In appellant's first point, it is claimed that the trial court erred in refusing to allow appellant to cross-examine respondent's Vice President of Engineering, William Raleigh (called as an adverse witness), to impeach and counter his direct testimony

that the Model DR pool heater was a "trouble-free" device, and that he had never seen a situation like the one in this case. In this connection, John Klof, respondent's Director of Services, had testified that among his duties he had been to seminars on how to manage a product liability claim when it came in; how to report it; what information to obtain; and what could be done to eliminate them in the future. He was involved in that activity at the time of trial. He testified that it had come to his attention that four pool heaters had fired without water flowing through the heat exchanger tubes, although he could not recall an assistant, Mr. Hogan, reporting to him any instances of servicemen experiencing heat exchangers firing without water in them. That is not a safe situation. Klof ran a test by cutting all the four safety controls on a heater, which shorts out the gas valve and allows the heater to fire at full fire for X number of minutes, and the heater burned up, similarly to what happened to appellant's pool heater, as it contends. Raleigh had given an expert opinion on direct examination that the cause of the fire was a test plug having been removed which allowed gas to be emitted into the vestibule area, which is within the heater between the combustion chamber and its door, in a torch-like effect. Raleigh was cross-examined as to his opinion, and was also asked: "Q. Do you, in your capacity, interact at all with Mr. Klof's department? A. Yes. Q. Do you exchange information with Mr. Klof? A. Yes. Q. He provides you with information and you provide him with information about your products? A. Yes. Q. Do you ever review his claim files about problems they may be experiencing with their products?" Objection was made to this question on the ground that appellant's counsel was trying to inject insurance into the case and that other claims were not relevant and that no foundation had been laid to show they had any relevance to this particular type of litigation. Counsel stated that he had no intention of inquiring about insurance, and that all he wanted to know was if he was provided by Mr. Klof of other events in the field. The objection was sustained and the jury was instructed to disregard the question.

▆▆▆ The general rule is that the trial court is clothed with broad discretion on whether or not to permit cross-examination of a witness upon collateral, irrelevant matters. *Huston v. Hanson,* 353 S.W.2d 577, 582[3,4] (Mo.1962); *Lineberry v. Shull,* 695 S.W.2d 132 (Mo.App.1985). Here, however, cross-examination of witness Raleigh was not collateral or irrelevant because his direct testimony went to the issue of whether or not there existed a defect, by reason of a lack of a protective fusible link, in respondent's pool heater, as contended by appellant. As noted, he testified that the Model DR pool heater was a "trouble-free" device, and that he had never seen a situation like the one in this case. Raleigh, however, acknowledged that he interacted with John Klof's department; that he exchanged information with Klof; and that Klof and he provide information to each other about the products. Importantly, Klof had testified that he managed product liability claims; that four pool heaters had fired without water flowing through the heat exchanger tubes; and that he had performed a test by cutting all four of the safety controls on a heater, allowing the heater to fire at full fire, and the heater burned up. In the quiet title case of *Sandy Ford Ranch, Inc. v. Dill,* 449 S.W.2d 1, 6 (Mo.1970), it was held proper to cross-examine plaintiff's principal owner, Kennedy, that he had bought the ranch from an individual who purchased it from the Alien Property Custodian for which Kennedy worked as an appraiser, because of which Kennedy could not buy it in his own name. It was said, page 6[7,8], "It has long been the rule in Missouri that on cross-examination a witness may be asked any questions which tend to test his accuracy, veracity or credibility or to shake his credit by injuring his character. He may be compelled to answer any such question, however irrelevant it may be to the facts in issue, and however disgraceful the answer may be to himself, except where the answer might expose him to a criminal charge." See also *Chism v. Cowan,* 425 S.W.2d 942, 948[6,7] (Mo.1967).

In *Bartlett v. Kansas City Public Service Co.*, 349 Mo. 13, 160 S.W.2d 740, 742[2–5] (1942), it is said, "To prevent the tribunal from being misled by false testimony two safeguards to truthfulness have been developed in our common law procedure. One of them is the judicial oath administered to witnesses with the attendant penalties for wilful and deliberate perjury. The other is cross-examination through which the opponent is enabled to expose intentionally false swearing and also to bring to light circumstances bearing upon inaccuracies of the witness in observation, recollection or narration, and to lay the foundation for impeachment of the witnesses." [It was held in the *Bartlett* case that there was opportunity to cross-examine two witnesses on the identical issues in a previous case.] See also *Kearns v. Sparks*, 260 S.W.2d 353, 360[16] (Mo.App. 1953), and cases cited. More important is the case of *Pettus v. Casey*, 358 S.W.2d 41, 44 (Mo.1962). There, a deposition of a witness, who was present in the courtroom at trial, was read into evidence, and thus, there was no cross-examination of the witness, a situation not dissimilar from that here. It was there held, "The right to cross-examine a witness who has testified for the adverse party is absolute and not a mere privilege. (Citations omitted.)", and, "A trial court may properly exercise its discretion as to the scope and extent of cross-examination, but it is not within the court's discretion to prevent cross-examination entirely. (Citations omitted.) The admission in evidence of the depositional statements of Walton when he was in the courtroom had the effect of denying and preventing the cross-examination of the witness to which the defendant was entitled as a matter of right. For this reason, if no other, *the error was prejudicial* and justified the grant of a new trial." [Emphasis added.] In this case, appellant was by the ruling of the court denied the opportunity to cross-examine Raleigh, a key employee of respondent, to show whether or not his interaction with Klof and his department *showed* occurrences of firing of the pool heater without water, and to show his knowledge that Klof's test had resulted in

a burned-up pool heater which was without safety controls. This relates to Raleigh's further testimony, and that of respondent's expert witness, Clifford, that the cause of the fire was that a test plug had been removed which allowed gas to be emitted into the heater vestibule in a torch-like effect. As in the *Pettus* case, the error was prejudicial and alone entitles appellant to a new trial. It matters not that Raleigh, respondent's vice president of engineering, was called as an adverse witness. *Bartleman v. Humphrey*, 441 S.W.2d 335, 349[27] (Mo.1969), and cases cited.

Further, under Point I, appellant claims that the trial court erred in reversing a prior ruling and sustaining an objection to a question put to John Klof, called as an adverse rebuttal witness, as to his receiving complaints over the years concerning the Teledyne–Laars DR–250 pool heaters. As noted, Raleigh testified that the Model DR pool heater was a trouble-free device, and he had never seen a situation like the one in this case. He also acknowledged that he exchanged information with Klof as to products, but an objection was sustained as to his reviewing Klof's claim files, above held to have been error. The general rule is stated in 63 Am.Jur.2d, Products Liability, § 236, (1984): "However, proof that injury from the use of the product alleged to have caused the subject injury was suffered by persons other than the one for whose injury recovery is sought has been viewed as evidencing, but not establishing, the product's defectiveness." See also 63 Am.Jur.2d Products Liability, § 237, (1984), on the admissibility of other accidents involving the same product, with the proviso that such other accidents occurred under the same or substantially similar conditions as that involving the plaintiff, and with reasonable proximity in time; and American Law of Products Liability 3d § 30.30 (1987), and extensive footnoted cases; and West's Handbook Series, Products Liability, § 225, (1979). Note also the case of *Albers Milling Company v. Carney*, 341 S.W.2d 117, 123 (Mo.1960), where the same feed was fed by other turkey growers as the plaintiff, which resulted in other losses, was held admissible. Here, no opportunity

was given appellant to inquire as to prior claims or complaints, to ascertain their nature, and to establish that such claims were made under the same or similar conditions as that of appellant. Thus, the jury was perhaps deprived of the full picture as to the claimed defect in the DR 250 pool heater, which, if presented, might have changed the result. In this connection appellant had no opportunity to inquire in detail the cause of complaints in nineteen instances of claims or lawsuits revealed by respondent pursuant to discovery proceedings, some of which heaters burned, fired without water, overheated, and exploded. There were two other such instances which appellant discovered on its own. It was error to have prevented the rebuttal testimony of John Klof on the issue of other claims.

On August 5, 1985, the trial court ruled that appellant was only entitled to discovery for the time that the Model DR 250 pool heater was manufactured, December 1977 through December 1979. At that time, appellant believed that the failure in the pool heater was caused by a defective pressure switch, but several months later during depositions, it learned that "flame rollout" was occurring in respondent's heaters with sufficient frequency that in 1983, it installed a fusible link in its pool heaters to detect and eliminate flame rollout problems, and service orders were generated by respondent which service orders were not consulted for claims or complaints such as that here. Appellant requested further discovery which was denied upon respondent's claim that it would be too burdensome. Prior to retrial, appellant should be allowed to make discovery beyond the December 1979 period first allotted and at least up to the time that respondent began installing the fusible link in its pool heaters, about 1983. In this connection, appellant, on retrial, should be permitted to inquire whether the installation of fusible links solved any preexistent problems of flame rollout damaging wiring and permitting heaters to continue to fire without water and thus to burn up. See 63 Am.Jur.2d, Products Liability, § 251, (1984), et seq., stating to the effect that in products liability cases, as distinguished from negligence cases, design changes have probative value on the issue of whether or not a product is defective. See also Annot. 74 A.L.R.3d 1001 (1976), et seq.

On retrial, appellant should further be permitted to show its lost profits occasioned by the fire if the evidence then offered is sufficiently definite and certain so the jury can make a reasonable estimate of the loss without resorting to speculation. *Chmieleski v. City Products Corp.*, 660 S.W.2d 275, 298 (Mo.App.1983). It appears that appellant's owner and manager, Leigh Wilson, did present evidence from its business books which would reasonably establish that loss, although, since the jury in this trial returned a verdict for respondent, the issue need not be now ruled.

Appellant says that it was entitled to a judgment N.O.V., but that relief may not be given because the issue of the cause of the fire under the circumstances and the differing expert testimonies was for the jury to determine.

Because of trial errors as ruled above under appellant's Point I, the judgment is reversed and the case is remanded for new trial.

All concur.