**Timothy M. HERMAN, minor, et al., Plaintiffs/Appellants,**

v.

**Susan ANDREWS, et al., Defendants/Respondents.**

**No. ED 74823, ED 74801.**

Missouri Court of Appeals,
Eastern District,
Division Five.

May 22, 2001.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 3, 2001.

Application for Transfer Denied
Aug. 21, 2001.

Dallas W. Cox. Jr., St. Louis, for appellant.

James William Childress & Jerry Robert Wilding, Thomas Blumeyer Weaver, St. Louis, for Susan Andrews.

Clark H. Cole, St. Louis, Steven E. Danekas & Kevin B. Reid, Chicago, IL, for Crosman Corp.

CRANDALL, Judge.

Plaintiffs, Timothy Herman (hereafter Tim) and his parents, brought an action after Tim sustained injuries as a result of Aaron Blumenfeld shooting Tim in the eye using a Crosman Model 2100 combination BB/pellet air rifle. The shooting occurred at the home of defendants, Susan Andrews and her son Travis Andrews. The jury returned a verdict in favor of defendant, Crosman Corp. (hereafter Crosman), on plaintiffs' failure to warn claim. The jury also returned verdicts in favor of Susan Andrews and Travis Andrews on plaintiffs' negligence claims. On appeal, plaintiffs challenge the judgment entered as to Susan Andrews and as to Crosman.[1] We affirm the judgment as to Susan Andrews and Travis Andrews. We reverse the judgment as to Crosman and remand.

Coleman Airguns, Inc. began manufacturing the Model 2100 combination BB/pellet air rifle (hereafter Model 2100) in 1983. Crosman acquired the Model 2100 product line from Coleman Airguns, Inc. on August 27, 1990. In 1992, Susan Andrews and her son Travis Andrews (Travis) moved into a home with an attached garage. That year, Susan Andrews bought Travis a Model 2100. Crosman's Senior Vice President, James Jereckos, would later state that Crosman manufactured, designed and put the Model 2100 at issue into the stream of commerce.

During the school year, Travis would stay at home alone after school until Susan Andrews came home from work. Susan Andrews permitted Travis to invite friends to his house while he was home alone. Susan Andrews knew that Tim and Aaron Blumenfeld (Aaron) spent considerable time at her home without adult supervision. Travis, Tim and Aaron often entered the home through the garage to retrieve sports equipment and bicycles. The sports equipment was stored in trashcans without lids.

In addition to the Model 2100, Travis also had other air rifles. According to Susan Andrews and Travis, Susan Andrews' rule was that the air rifles were only to be used at her parents' farm. Susan Andrews learned that "a few months before the accident," Travis, Aaron and Tim had shot the air rifles at her house. She then placed the air rifles in the trunk of her car. The air rifles remained in the car until Susan Andrews went on vacation, and Travis went to his grandparents' farm with the air rifles. When Susan Andrews returned from her vacation, approximately two days prior to the shooting, she picked up Travis and retrieved the Model 2100 and another air rifle. She and Travis unloaded the car and placed the Model 2100 and the other air rifle in the trashcans where the sports equipment was stored.

On July 27, 1994, Travis was working as a lifeguard at a pool near his house. Tim, then age fifteen, and Aaron, then age sixteen, met Travis at the pool and waited for him to finish work. Travis suggested that Tim and Aaron wait for him at his house until he finished working. Tim and Aaron walked to the Andrews' house. When they arrived, they entered the garage using the digital code to open the garage door. On previous occasions, Travis had given the digital code to both Tim and Aaron. Tim went to the back of the garage and sat on a step. Aaron went through a trashcan containing the air rifles. He picked up the model "760" air rifle, pumped it and shot it

1. As will be discussed, this case returns to this court after retransfer by the Missouri Supreme Court.

at Tim's foot.[2] According to Tim, he suffered no injury from this shot. Aaron then put the air rifle back in the trashcan and picked up the Model 2100. He checked it to see if it was unloaded, walked around the garage and checked it one more time. He did not see a BB or pellet in the chamber. He walked to the entrance of the garage and aimed the Model 2100 at Tim, who stood up from the step. Aaron raised the Model 2100 and shot Tim in the left eye. Tim immediately fell to the ground and covered his eye with his hand.

Plaintiffs brought an action against Crosman, Susan Andrews and Travis.[3] Plaintiffs settled their claim against Aaron Blumenfeld. The jury returned a verdict for Crosman on plaintiffs' failure to warn claim. The jury also returned verdicts for Susan Andrews and Travis on plaintiffs' negligence claims. Plaintiffs appeal.

■ Plaintiffs argue that the trial court erred in its jury instructions on their negligence claim against Susan Andrews. Plaintiffs contend that the court should have instructed the jury by the "correct legal standard of highest degree of care in the maintenance of the loaded air rifle, an inherently dangerous instrument." The appropriate standard of care is a question of law for the court. *Lopez v. Three Rivers Elec. Coop., Inc.*, 26 S.W.3d 151, 158 (Mo. banc 2000). For the claim against Susan Andrews, the jury was instructed as follows[4]:

On the claim of plaintiff Timothy Herman for personal injury based on negligence as against Susan Andrews, your verdict must be for plaintiff Timothy Herman and against defendant Susan Andrews if you believe:

First, defendant Susan Andrews knew prior to the occurrence mentioned in the evidence of not reasonably safe use of the air rifle by minors on her premises, and

Second, defendant Susan Andrews knew there was an insecure air rifle and its ammunition in her garage and knew that such condition was not reasonably safe for minors she knew to be frequenting her premises in her absence, and

Third, defendant Susan Andrews failed to store the air rifle and its ammunition securely in a safe place, and

Fourth, defendant Susan Andrews was thereby negligent, and

Fifth, such negligence either directly caused damage to plaintiff Timothy Herman and/or combined with the acts of Aaron Blumenfeld and/or failures of defendant Crosman Corporation and/or defendant Travis Andrews to directly cause damage to plaintiff Timothy Herman.

Instruction number 5, submitted to the jury provided in part:

The term "negligent" or "negligence" as applied to defendant Susan Andrews means the failure to use ordinary care. The phrase ordinary care as applied to defendant Susan Andrews means that degree of care that an ordinarily careful person would use under the same or similar circumstances.

*See* MAI 11.05 (defining ordinary care).

The trial court refused to submit the following instruction offered by plaintiffs:

---

2. Travis referred to this air rifle as the "Crosman 760 Pumpmaster."

3. By stipulation of the parties, Crosman was substituted for Coleman Airguns, Inc.

4. The jury was given a similar instruction for the claim against Travis Andrews.

The term "negligent" or "negligence" as applied to defendant Susan Andrews means the failure to use the highest degree of care. The phrase "highest degree of care" as applied to defendant Susan Andrews means that degree of care that a very careful person would use under the same or similar circumstances.

*See* MAI 11.01 (defining highest degree of care).

■ Susan Andrews' duty of care is analyzed by the duty that she as a possessor of real property owed to Tim, the person entering onto the land. That duty depends on Tim's classification as the entrant. *Bequette v. Buff,* 862 S.W.2d 921, 925 (Mo.App. E.D.1993). Entrants onto the land are generally classified as trespassers, licensees or invitees. Id. The possessor of real property owes a different duty depending upon the entrant's classification. Id.

■ A licensee is owed a duty of reasonable care for known hazards. *Taylor v. Union Elec. Co.,* 826 S.W.2d 57, 59 (Mo. App.1992). As a general rule, a possessor of real property owes no duty to a trespasser to put the land in a reasonably safe condition. *Cochran v. Burger King Corp.,* 937 S.W.2d 358, 364 (Mo.App. W.D.1996). But under certain circumstances, child trespassers are owed a duty of reasonable care. *Crawford v. Pacific Western Mobile Estates, Inc.,* 548 S.W.2d 216, 218–19 (Mo.App.1977)(quoting Restatement (Second) of Torts section 339 (1965)). Extensive discussion regarding Tim's classification is unnecessary. Susan Andrews was at best required to exercise ordinary care.

Plaintiffs contend, however, that landowners storing "loaded guns" on their property should be held to a highest degree of care standard, regardless whether children who "frequent" the property are licensees or trespassers.

There are "relatively few situations" in which Missouri courts have held that a defendant is required to use the highest degree of care. *Fowler v. Park Corp.,* 673 S.W.2d 749, 755 (Mo. banc 1984); *see Lopez,* 26 S.W.3d at 162 (J. Price dissenting)(stating that "Missouri case law has always demanded the highest degree of care regarding dangerous instrumentalities because of the great risk of injury or death."). "The one most often found is the statutory requirement of the exercise of the highest degree of care in the operation of motor vehicles on the highway." *Fowler,* 673 S.W.2d at 755 (citing section 304.010.1 RSMo. Cum.Supp.1983). Missouri courts have applied the highest degree of care standard in a "few other situations." *Id.* (citations omitted). For example, the highest degree of care standard has been held to apply in cases involving electric power lines, firearms and explosives. *Mrad v. Missouri Edison Co.,* 649 S.W.2d 936, 940 (Mo.App.1983); *Wagstaff v. City of Maplewood,* 615 S.W.2d 608, 612–13 (Mo.App.1981); *Lottes v. Pessina,* 174 S.W.2d 893, 898 (Mo.App.1943).

■ Tim sustained injuries as a result of Aaron's use of the air rifle. But, depending on their use, numerous objects can cause injury or even death. Plaintiffs rely in part on cases involving firearms where the highest degree of care standard has been applied. An air rifle, however, has different characteristics than a firearm.[5] The projectile from an air rifle is not expelled by the action of an explosive. We do not find that a combination BB/pel-

---

**5.** Under the criminal statutes, a firearm is defined as "any weapon that is designed or adapted to expel a projectile by the action of an explosive." Section 571.010.(5) RSMo. 1994.

let air rifle presents such an inherently great risk of injury or death, so as to require that the highest degree of care standard be applied. Accordingly, the trial court did not err in submitting instruction number 5 to the jury or refusing to submit plaintiffs' instruction defining negligence. Plaintiffs' point is denied.

■ Plaintiffs next argue that the trial court erred in sustaining Crosman's objections to a request for production by plaintiffs. We review the trial court's ruling for abuse of discretion. *State ex rel. Crowden v. Dandurand,* 970 S.W.2d 340, 343 (Mo. banc 1998); *State ex rel. Kawasaki Motors Corp. v. Ryan,* 777 S.W.2d 247, 251 (Mo. App.1989). Parties may use discovery to obtain relevant material, which means material reasonably calculated to lead to the discovery of admissible evidence. Rule 56.01(b)(1); *State ex rel. Crowden,* 970 S.W.2d at 342.

Plaintiffs made the following production request [6]:

17. All petitions for damages and/or complaints of users or those claiming injury in connection with any lawsuits or other documents in which it was claimed of the product type or product type substantially similar in design that a cause of such damages was in the design or materials of the following product parts:

(a) Product part known as the safety;

(b) Absence of automatic safety;

(c) Inability of a visual examination of the open chamber of the product or product type to reveal presence of a loaded pellet upon pulling the bolt rearward;

(d) Absence of a warning indicator to alert the user that a pellet is loaded in the chamber;

(e) Failure to adequately warn of any dangers of use.

The discovery request also provided the following definition of "substantially similar" [7]:

H. When referring to product type, the phrase "substantially similar" should be interpreted to mean product type which utilizes any of the same mechanism, absence of mechanism, or design of the product parts which plaintiffs set out in Count III, paragraph VI, and all subparagraphs thereof, at pages 10 and 11 of Plaintiffs' First Amended Petition.

Additionally, plaintiffs' discovery request required that unless otherwise stated the information furnished be for the ten years prior to the date of service of the discovery request, March 4, 1997. Crosman objected to plaintiffs' production request number 17 and responded as follows [8]:

Crosman specifically denies that any individual has ever been injured by any

---

6. Plaintiffs' request was directed to Coleman Airguns, Inc.

7. Plaintiffs' first amended petition is not part of the record but Crosman states that Paragraph IV of Count III of plaintiffs' second amended petition, that is part of the record, is "basically the same" as Paragraph VI of Count III of plaintiffs' first amended petition. In the second amended petition, Count III, Paragraph IV, plaintiffs alleged among other things that the Model 2100 was defective because visual examination of its chamber does not reveal the presence of a loaded pellet, the

Model 2100 does not contain a warning indicator to alert the user that a pellet is loaded in the chamber, the Model 2100 does not "incorporate" an automatic safety, and the Model 2100's shipping box and owner's manual did not have an adequate warning that visual examination of the chamber will not reveal the presence of a loaded pellet.

8. Crosman incorporated its response to plaintiffs' request number 16 as its response to plaintiffs' request number 17.

defect or defective condition in a Model 2100. Crosman will produce documents regarding claimed personal injuries from a Model 2100 air rifle occurring after August 27, 1990, and which Crosman received notice of before July 24, 1994, and allegedly caused by inadequate warnings, the absence of a loaded chamber indicator, or an allegedly defective safety mechanism, including the absence of an automatic safety. Otherwise, Crosman objects that request number 16 is vague, ambiguous, overly broad, unduly burdensome, argumentative, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Crosman also objected to the definitions of substantially similar and product parts, contending that the definitions were "so vague, ambiguous, and convoluted that they are incomprehensible."

By its order, the trial court limited plaintiffs' request number 17 to the Model 2100 only and therefore refused plaintiffs' discovery request regarding the product types that were substantially similar in design. The court also limited the time regarding the Model 2100 to the period from August 27, 1990 to July 24, 1994, as opposed to ten years requested by plaintiffs.

In the original appeal, this court held that the trial court abused its discretion in not permitting discovery for substantially similar models and by limiting discovery to the August 1990 to July 1994 period, as opposed to the ten years requested by plaintiffs. After this court issued the opinion, the Missouri Supreme Court granted Crosman's application to transfer the case. The Missouri Supreme Court thereafter granted Crosman's motion and amended motion to supplement the record with three letters pertaining to plaintiffs' discovery request. One letter from Cros-

man's counsel to plaintiffs' counsel provided "In response to your request for The Coleman Company's records concerning claims involving the Model 2100 air rifle ... Coleman is able to identify five claims involving the Model 2100." The "Date[s] of [the] incident[s]" for the five claims were December 30, 1983, May 12, 1985, December 2, 1986, August 9, 1988 and March 11, 1990. The Missouri Supreme Court retransferred the case to this court after oral argument.

Appellate courts will not reverse a judgment because of error that is not prejudicial. Rule 84.13(b); *Fairbanks v. Weitzman*, 13 S.W.3d 313, 321 (Mo.App. E.D. 2000). The supplemental record filed with the Missouri Supreme Court shows that despite only agreeing to "produce documents regarding claimed personal injuries from a Model 2100 air rifle occurring after August 27, 1990, and which Crosman received notice of before July 24, 1994," Crosman provided information as to the Model 2100 for more than thirteen years from the date of service of plaintiffs' request. Accordingly, plaintiffs cannot claim reversible error regarding discovery as to the Model 2100 for a ten year period. The issues remain regarding whether the trial court abused its discretion by not permitting discovery as to product types substantially similar in design and whether the request should be limited to August 1990 to July 1994, as opposed to ten years requested by plaintiffs.

In *State ex rel. Kawasaki Motors*, this court discussed the scope of discovery for a products liability case. The plaintiffs' action arose when one of the plaintiffs was injured in an accident involving an all terrain vehicle, and the plaintiffs named the wholesaler and manufacturer of the vehicle as defendants. *State ex rel. Kawasaki Motors*, 777 S.W.2d at 248. The plaintiffs alleged in part that these defendants failed

to warn of certain defects of the vehicle and the plaintiffs filed a "broad" request for production with nineteen requests, some with several subparts. *Id.* at 248–49. For example, the plaintiffs' third request was for copies of all depositions of the defendants' employees or expert witnesses conducted in any other case for the previous seven years that involved an alleged injury with a three or four wheel all terrain vehicle. *Id.* at 249. The defendants argued that the "basic issue" was whether they were required "to produce documentation and information for ATV models other than the KXT 250–A2, Tecate, series involved in [the] accident." *Id.* at 250. The trial court sustained the plaintiffs' motion as to seventeen requests, including the plaintiffs' third request, and the defendants filed a petition for a writ of prohibition with this court.[9] *Id.*

This court issued an order of prohibition and set forth some examples showing that the plaintiffs' request was overbroad, burdensome and oppressive. *Id.* at 252. A number of the plaintiffs' requests were not limited by time considerations relating to the manufacture of the all terrain vehicle at issue or to the same or similar models but rather were applicable "to any and all models." *Id.* The trial court's order included thirty-eight different models and all those models were designed for different purposes, and while they had some common characteristics they were not substantially similar. *Id.* Furthermore, the requests were not limited to the same or similar circumstances of the accident at issue, or the alleged defective components or complaints regarding similar mishaps. *Id.* This court stated that, "While it may be proper, under the rules of discovery, to obtain information concerning other prior injuries or complaints caused by the prod-

uct, the discoverability of such other complaints is limited to the same or similar model." *Id.* at 253. This court then held:

In short, the request made in this case is overbroad, burdensome and oppressive because the request is not (1) limited to the time frame in which the three-wheel Tecate model series was manufactured, (2) limited to the production model of the three-wheel Tecate series involved and the allegedly defective components at issue; (3) limited to the issues raised in the petition and the allegedly defects asserted therein; (4) in conformity with judicial decisions relating to (a) other complaints or accidents under the same or similar circumstances and occurrences[ ] within the parameters of the petition and limited to the same or similar product model containing the same allegedly defective components . . . .

*Id.* (footnote omitted).

Here, plaintiffs' production request was limited to the Model 2100 or product types that were substantially similar in design. In its response, Crosman agreed to "produce documents regarding claimed personal injuries from a Model 2100 air rifle occurring after August 27, 1990, and which Crosman received notice of before July 24, 1994, and allegedly caused by inadequate warnings, the absence of a loaded chamber indicator, or an allegedly defective safety mechanism, including the absence of an automatic safety." The information as to inadequate warnings, the absence of a loaded chamber indicator, defective safety mechanism, and the absence of an automatic safety comports with plaintiffs' allegations regarding the Model 2100 that allegedly caused Tim's injuries. Contrary to the request in *State ex rel. Kawasaki Motors*, plaintiffs' production

9. The trial court limited "in a few instances but not all, the production of documents to the 3–wheeler ATV and not the 4–wheeler." *Id.*

request was not for any and all models, and was limited to issues raised in the petition and the alleged defects. In their production request, plaintiffs defined a substantially similar product type as being a type that "utilizes any of the same mechanism, absence of mechanism, or design of the product parts" that plaintiffs set out in their petition. Accordingly, plaintiffs' request for substantially similar product types was within the parameters of the petition and was for those product types that contain the same allegedly defective components. We find that plaintiffs' request for substantially similar product types was not overbroad, unduly burdensome or oppressive. *See Rinker v. Ford Motor Co.*, 567 S.W.2d 655, 663 (Mo.App. 1978). The trial court erred in limiting plaintiffs' request to the Model 2100.

As stated in *State ex rel. Kawasaki Motors*, a production request is overbroad, burdensome and oppressive if it is not limited to the time of manufacture. *State ex rel. Kawasaki Motors*, 777 S.W.2d at 253; *see also, Wilson Court, Inc. v. Teledyne Laars*, 747 S.W.2d 239, 243 (Mo.App. 1988). But here, plaintiffs' request was for a period less than the time that the Model 2100 was manufactured. Plaintiffs' production request was for ten years prior to March 4, 1997, the date of service of the production request. Manufacture of the Model 2100 began in 1983. Despite its response to plaintiffs' request, Crosman provided information as to the Model 2100, with the first "Date of incident" being December 30, 1983. Crosmanfs, therefore, provided information as to the Model 2100 not only for the ten year period requested by plaintiffs but for more than thirteen years from March 4, 1997. Under these circumstances, we find that plaintiffs' request as to substantially similar product types for the ten year period from the date of service of the request was not overbroad, unduly burdensome or oppressive,

given Crosman's disclosure of information regarding the Model 2100. Plaintiffs' point is granted.

The judgment as to Susan Andrews and Travis Andrews is affirmed. The judgment as to Crosman is reversed and the cause is remanded for further proceedings.

MARY K. HOFF, C.J., and
KATHIANNE KNAUP CRANE, J.,
concur.